## AFFIDAVIT

I, Wade Cochran, having been duly sworn, do hereby depose and state as follows:

1. I am a Detective Sergeant with the Montpelier, Vermont, Police Department. I am currently assigned to the Vermont Drug Task Force as a Detective. I have been on the Task Force since December 2013. I have been a police officer since 2002. I have received specialized training in the investigation of drug crimes.

2. This affidavit is submitted to show that probable cause exists to believe that Krystal Whitcomb knowingly and intentionally distributed heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1).

3. The information contained in this affidavit is based on my training and experience, as well as my own investigation and information I received from other agents, law enforcement personnel, and witnesses. This affidavit is intended to show that there is sufficient probable cause to believe that Krystal Whitcomb committed the foregoing offense and does not set forth all facts I know from my investigation into this matter.

4. In July 2018, the VDTF started an investigation into the distribution of heroin by Michael Pimental, Krystal Whitcomb and Shawn Whitcomb. Krystal Whitcomb is Shawn Whitcomb's daughter. The investigation utilized a cooperating individual ("CI") who told me, among other things, that Krystal Whitcomb was dealing heroin for her boyfriend, Michael Pimental. The CI agreed to participate in a controlled buy of heroin from Krystal in exchange for payment. The CI's criminal history consists of two prior misdemeanor convictions for petit larceny (in 2016 and 2017) and a 2017 felony for larceny from a person. On the felony conviction and one of the misdemeanors, the CI received a two-year deferred sentence.

5. On October 10, 2018, I met with the CI in St. Johnsbury to arrange the buy of

1

heroin from Krystal. The CI exchanged a series of text messages with the phone number 802-274-4145, which the CI said was the phone number for Krystal. During the texts, the CI and Krystal agreed to meet so the CI could pay Krystal back for a previous drug debt, and also so the CI could purchase more heroin.

6. Prior to and following the controlled buy, the CI was searched and no large sums of money, drugs or contraband were found. Law enforcement also surveilled the area around the buy, audio and video recorded the buy, and provided the CI with serialized currency to conduct the buy.

7. On October 10th, members of the Task Force dropped the CI off in St. Johnsbury. I then observed a silver Cadillac pull into the parking lot and I saw that Krystal Whitcomb was the operator of the car. I am familiar with Krystal based on my participation in this case, and because I interviewed her in connection with this case (as described below). The CI walked to the driver's side of the car, met with Krystal and gave Krystal $200 ($100 toward the drug debt and $100 toward the heroin purchase). Krystal gave the CI eight bags of heroin and while the CI was standing by the car, Krystal appeared to snort a substance the CI believed was heroin.

8. The CI left the transaction and later provided me with the eight bags of heroin the CI purchased from Krystal. The suspected heroin field tested positive for heroin and fentanyl. I later reviewed the audio and video recording of the controlled buy and it is consistent with the information described above.

9. On October 13, 2018, the Vermont State Police started an investigation into the disappearance of Michael Pimental, Krystal's boyfriend. The next day, on October 14, 2018, a Deputy Sheriff in Grafton County New Hampshire stopped the silver Cadillac in Haverhill, New Hampshire for a motor vehicle violation. Krystal was in the passenger seat and an unknown

2

male was driving the car. Vermont State Police (VSP) detectives Mark Potter and Drew Cota arrived on the scene of the stop and spoke to Krystal about Pimental. During the stop, law enforcement recovered two firearms. The first, a Highpoint model JCP .40 caliber Smith and Wesson, was found tucked between the passenger seat and the center console and was loaded with a full magazine. The second, a Highpoint model CF380 .380 caliber, was found in a bag belonging to Krystal. This second gun had a round in chamber. Krystal told VSP that both firearms belonged to her.

10. The operator of the Cadillac was ultimately arrested on New Hampshire state charges and the Cadillac was towed. VSP detectives offered Krystal a ride back to Vermont and she agreed. At approximately 1:40 p.m., on October 14th, the detectives and Krystal arrived in the parking lot of the St. Johnsbury barracks. As Krystal exited the front passenger seat of the car, a small rectangular package and a blue straw fell from her lap. The detectives recognized these items as possibly drugs and drug paraphernalia, and seized them. The detectives later opened the package and found three bundles of a substance which field tested positive for heroin and fentanyl.

11. VSP detectives then interviewed Krystal regarding the suspicious death of a person believed to be Michael Pimental. During the interview, Krystal was arrested for the October 10th controlled buy. I then read Krystal her Miranda rights which she agreed to waive in writing. Krystal told me, among other things, that she travels out-of-state with Pimental to pick up heroin.

12. After my interview with Krystal, I was looking at the video monitor for the room where Krystal was sitting and I observed her reaching near the waistband of her pants. Other VSP detectives observed the same thing. Detectives then confronted Krystal and Krystal

produced several packages of a substance which field tested positive for cocaine. The substances, with packaging, collectively weighed approximately two ounces.

Dated at Burlington, Vermont, this 15th day of October, 2018.

WADE COCHRAN
Vermont Drug Task Force

Sworn to and subscribed before me this 15th day of October, 2018.

HONORABLE JOHN M. CONROY
United States Magistrate Judge

4